IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30665-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARIO ALAN COBARRUVIAS G, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Appellant Mario Cobarruvias failed to appear for the final day of his trial after accompanying his son to the hospital. We conclude that the trial court erred in denying the defendant's motion for a new trial. We reverse and remand for a new trial.

## FACTS

Mr. Cobarruvias eventually was charged with two counts of delivery of methamphetamine to a police informant. Both charges were alleged to have occurred in February 2009. A trial later that year ended in a mistrial after the jury deadlocked. Mr. Cobarruvias testified on his own behalf at that trial.

After a series of continuances, the matter proceeded to trial for the second time in January 2012. Mr. Cobarruvias was permitted to remain out of custody pending trial.

The trial did not run smoothly due to factors beyond the control of the court. The jury was selected on Monday, January 9, and the case was recessed until January 12. That morning, however, the prosecutor needed to seek medical attention for an emerging health issue; the case was recessed to the afternoon. The prosecutor was unable to continue due to the health matter. The case was recessed again over a holiday weekend until Tuesday, January 17.

The prosecutor's co-counsel conducted the trial. Mr. Cobarruvias did not appear on time and the court indicated it would allow him 15 additional minutes before authorizing a bench warrant after defense counsel argued that his client had traditionally been arriving five minutes late. He appeared within the 15 minute window. The following day, January 18, Mr. Cobarruvias was again late. His counsel admitted to stalling the court in the hope that his client would make it before testimony resumed. Mr. Cobarruvias soon did arrive and attributed his tardiness to the weather conditions and a long line at the security station.

The judge and counsel conferred briefly that afternoon to discuss the schedule for the remaining witnesses. Defense counsel at that point indicated that he was uncertain whether or not his client would testify.

The beginning of trial on the 19th was delayed until 9:30 a.m. for defense counsel's emergency dental work. Trial could not resume on Friday the 20th due to bad weather, so the final day of trial was extended to Monday January 23.

Mr. Cobarruvias did not appear at 9:00 a.m. that morning along with the rest of the participants. At 9:28 a.m., the court noted that road conditions were fine and that Mr. Cobarruvias had a history of being late. The court concluded that the defendant was voluntarily absent. Testimony continued; Mr. Cobarruvias still did not appear.

The State rested its case after prosecuting two final witnesses. The defendant still had not appeared and defense counsel asked for permission to submit his testimony from the previous trial. The court denied the motion due to the voluntary absence. A man in the audience, whom counsel later identified as the defendant's brother, stated that he had been able to locate Mr. Cobarruvias. After conferring with the man, defense counsel advised the court that it was believed Mr. Cobarruvias had taken his young son to the hospital. The information was contained in a note found by the brother at the defendant's house.

Defense counsel then asked to continue the case to the afternoon so that he could attempt to ascertain his client's whereabouts and bring him in to testify. The court denied the motion and the defense rested without presenting any witnesses. It was approximately 11:30 a.m. The parties then presented argument over the noon hour before turning the case over to the jury.

The jury returned its verdicts at approximately 1:30 p.m., finding the defendant guilty of one count of delivery of methamphetamine and acquitting him on the second

3

count. The jury also found that the delivery occurred within 1,000 feet of a school zone. The defendant was arrested at the hospital between 2:00 and 2:30 p.m. that day.

The defense moved for a new trial and documented the defendant's activities addressing his son's medical condition on January 23. After hearing argument, the court denied the motion, noting that the defendant made no effort to contact his counsel or the court, and the nature of the son's illness did not prevent him from doing so. The court concluded that the absence was voluntary.

The court imposed a standard range sentence. Mr. Cobarruvias then timely appealed to this court.

## ANALYSIS

Mr. Cobarruvias challenges the court's initial determination that he was voluntarily absent and the denial of his motion for a new trial. We agree with that second contention and reverse and remand for a new trial.[1]

Issues arising from a criminal defendant's absence after trial has started have been addressed in several published cases in this state. A criminal defendant has the right to be present at trial—this right derives from basic due process of law and the defendant's right to confront witnesses against him under both the state and federal constitutions. *See*

---

[1] We therefore do not address his arguments concerning the judgment and sentence. We do, however, grant the December 10 motion to supplement the clerk's papers in this case.

*generally State v. Thomson*, 123 Wn.2d 877, 880, 872 P.2d 1097 (1994). This right can be waived by a voluntary absence after trial has commenced. *Id.*

To determine whether a voluntary waiver has occurred, the trial court must follow a three-part process to evaluate the totality of the circumstances, including:

> "(1) . . . sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) . . . a preliminary finding of voluntariness (when justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody before sentence is imposed."

*Id.* at 881 (quoting *State v. Washington*, 34 Wn. App. 410, 414, 661 P.2d 605 (1984)). When there is a voluntary waiver, the trial judge has discretion to continue with the trial "without further consideration." *Id. Thomson* also noted that there is a presumption against waiver. *Id.* The presumption against waiver applies to all three prongs of the *Thomson* test. *State v. Garza*, 150 Wn.2d 360, 367-68, 77 P.3d 347 (2003). It "must be the overarching principle throughout the inquiry." *Id.* at 368.

*Garza* also determined that the trial court's waiver determination is a factual issue to which the abuse of discretion standard applies on review. *Id.* at 366. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *Id.* Use of an incorrect legal standard in making a discretionary decision also constitutes an abuse of discretion. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). The decision to grant or deny a motion for a new trial also is reviewed for abuse of discretion. *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997).

5

*Thomson* and *Garza* demonstrate how these standards have been applied in practice. In *Thomson*, the named defendant was tried with a codefendant. 123 Wn.2d at 878. On the second day of pretrial hearings, Mr. Thomson called the court to say he would be late due to car problems. The hearings proceeded without him and he eventually arrived at an unspecified time that morning. *Id.* at 879. Jury selection began that afternoon and the case was recessed for four days. Mr. Thomson did not appear on the morning the trial resumed; his counsel told the court that Thomson had called and left word with the attorney's secretary that he had a medical emergency that would prevent him from being in court that day. No further information was provided and there was no way to contact Mr. Thomson. *Id.*

The trial court allowed defense counsel a brief recess to attempt to locate his client. When that effort failed, the court issued a bench warrant and recessed the case until 1:30 p.m. *Id.* Mr. Thomson was still absent at that time and the court concluded that he was voluntarily absent. Jury selection resumed and trial continued over defense objection. *Id.*

The following day, Mr. Thomson still was not present and had not contacted his counsel, the court, or his mother (with whom he lived). Defense counsel sought a continuance. The motion was denied and trial continued. The jury returned a guilty verdict against both defendants. Later that day, Mr. Thomson contacted his attorney and learned of the verdict. *Id.* He surrendered on the warrant. *Id.*

6

Thomson apologized at sentencing but apparently did not further explain his absence. *Id.* at 880. He appealed and this court affirmed the conviction. *Id.* The Washington Supreme Court then granted review and announced the standards applicable to the situation of a defendant who absented himself after trial had begun. *Id.* at 881. In its application of the three-part analysis, the court concluded that the trial judge had not abused his discretion in finding that Thomson's absence was voluntary. *Id.* at 884.

*Thomson* did not address the final prong of the analysis, probably because the defendant did not attempt to justify his absence once he returned to court. That portion of the analysis was discussed, however, in *Garza*. There, the defendant had regular attendance problems. He was three hours late for a pretrial hearing. He then was 45 minutes late for the first day of trial and received a warning from the judge about further tardiness. *Garza,* 150 Wn.2d at 363. Mr. Garza did not appear for the last day of trial. His counsel advised the court that his client had told him he was running late and would be there by 9:20 a.m. *Id.* at 364. When the defendant still had not appeared by 9:25 a.m., the trial judge found him to be voluntarily absent and directed that the trial continue without him. Defense counsel checked with his office at 10:00 a.m.; no new information had been received. At 11:00 a.m., the judge issued a bench warrant. *Id.*

Trial concluded that day with a jury determination that the defendant was guilty. On June 26, the defense filed a motion for a new trial and explained that the defendant had been arrested on an outstanding Bothell municipal warrant while en route to his trial.

7

*Id.* Mr. Garza allegedly told the jail to alert King County that he could not "make it in."

*Id.* No call was ever made, nor did Mr. Garza make further efforts to contact the court or

counsel. He was released from jail that evening. *Id.* The trial judge denied the motion,

deciding that the arrest on an outstanding warrant still constituted a voluntary absence.

*Id.* at 365.

The Washington Supreme Court reversed and ordered a new trial. It found that

waiting five minutes[2] on the final day before finding the absence to be voluntary

constituted an abuse of discretion in light of the presumption against waiver. *Id.* at 369.

The trial court could not make a determination of voluntariness "without reference to the

presumption against waiver." *Id.*

The Supreme Court also addressed the effect of incarceration on the voluntariness

inquiry. It commented upon, although it did not decide the adequacy of, Mr. Garza's

attempt to contact the court about his incarceration. *Id.* at 370-71. The court did indicate

that an incarcerated defendant "must show that he or she genuinely tried but failed to

contact the court." *Id.* at 370. The reasonableness of that effort determines whether or

not the original voluntariness determination stands. *Id.*

We have discussed these two cases in some detail as both have an impact on this

case. As in *Garza*, both Mr. Cobarruvias and Mr. Garza had regular difficulties

---

[2] The court apparently was counting the time between the finding of voluntary absence and the expected arrival time rather than the opening of that day's court session.

appearing for trial in a timely fashion, although Mr. Garza alerted his counsel about his final delayed appearance while Mr. Cobarruvias did not. The *Garza* court treated the telephone call as a significant indicator that Mr. Garza's absence might not be voluntary. *Id.* at 369. At a minimum, it suggested that more time was needed to investigate the situation before declaring the absence voluntary. *Id.*

In contrast, Mr. Cobarruvias never attempted to alert counsel or the court when he expected to be tardy. On these facts, we think the trial court could consider his "body of work" on the tardiness issue. This was not a mere 30 minute unexplained absence (at the time of the voluntariness finding), but rather the latest episode in a spotty attendance record. We do not read *Garza* as ruling that some minimum period of time must pass before an absence can be addressed or that a history of tardiness is less egregious than a single episode. The trial court had a sufficient basis for initially finding that the unexplained absence on the final day of trial was voluntary.

Nothing that developed during the day changed the situation. The defendant made no efforts to contact his counsel or the court. Defense counsel eventually relayed a hearsay report that the defendant had left a note in his own home concerning the hospital visit. While the court could have granted a delay to allow further investigation, it was not required to do so. In the absence of any attempt by the defendant to convey information to the court, *Thomson* and *Garza* indicate that the trial judge acted within his discretion in permitting the case to continue to its conclusion in the defendant's absence.

9

However, it was a different story once the defendant had been apprehended and put forth his explanation. As in *Thomson*, the basis for the defendant's absence was medically related. Unlike that case, Mr. Cobarruvias documented his situation. The defendant having come up with a reasonable explanation for his absence, *Garza* required the trial court to then consider that explanation in light of the presumption against waiver. 150 Wn.2d at 368. Unfortunately, that was not done here.

The trial court carefully considered the motion and explained its reasoning at some length. The court determined that Mr. Cobarruvias had not shown that he was unable to make contact with the court or counsel, nor had he shown that his obligations as a father left him too pressed for time to attempt telephone contact. Under the circumstances, the court concluded that the defendant's absence was voluntary. He had chosen to take his son for medical attention and chosen to stay with him while he was being treated. We agree with the trial court that given the defendant's limited evidentiary showing, it was reasonable to conclude that the absence was voluntary given the lack of effort to contact the court and the lack of evidence that his presence at the hospital was medically necessary.

Nonetheless, despite the careful consideration given the motion, we believe the trial court erred in not expressly considering the defendant's showing in light of the "overarching" presumption against waiver. Neither *Thomson* nor *Garza* dealt with the application of the presumption to the third prong of the *Thomson* test. In *Thomson*, the

issue did not arise due to lack of a defense argument for a new trial, while in *Garza* the court overturned the judgment based on the initial voluntariness ruling (prong one of the *Thomson* test). Although the *Garza* court went on to comment on both the effect of incarceration on the voluntariness ruling and the defendant's obligation to attempt contact with the court,[3] it never applied the presumption to the reasonableness of defendant's efforts because it did not need to do so. Thus, we cannot read its discussion of an incarcerated defendant's obligation to contact the court as an absolute bar to the trial court's consideration of defendant's explanation for his absence.

Here, the court needed, but failed, to consider the presumption in its assessment. The presumption requires more than that the court simply listen to the defendant's explanation. It then must consider the absence question anew starting with the presumption against voluntary waiver. As applied here, that would mean the court must determine what actually happened and assess the reasonableness of the defendant's actions[4] on the final day while also considering other facts such as Mr. Cobarruvias's absences throughout the trial and the initial failure to explain his absence, and ultimately

---

[3] Both of these aspects of the opinion can technically be considered dicta in light of the court's disposition of the case. That characterization, however, plays no role in our resolution of this case.

[4] It is at this point that a parent's role as a medical decision maker for a minor child would factor into the necessity for Mr. Cobarruvias's actions. Likewise, the court could consider his ability and failure to attempt contact with the court in assessing the reasonableness of his behavior that day.

11

decide whether it believed the defendant's absence on the final day was a voluntary decision.

Although the trial court here did consider the totality of the circumstances, we cannot determine where it started its analysis. Did it begin anew with consideration of the presumption against voluntary waiver, or did it begin with its (well supported) original determination of voluntariness and weigh that against the reasonableness of the defendant's actions? As it is unclear whether the court applied the appropriate test, we conclude that it abused its discretion in denying the motion for a new trial. *Rundquist.*

The judgment is reversed and the case remanded for trial.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, J.

12