IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36378-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIM ALLEN LOE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Tim Loe appeals after a jury found him guilty of fourth degree assault. He argues the trial court violated his state and federal constitutional right to be present at all critical stages of trial when it resumed the trial in his absence. Because the trial court adhered to procedural requirements and because substantial evidence supports its finding that Loe was voluntarily absent from trial, we affirm.

FACTS

In October 2017, Tim Loe called the police because Carol Taylor, Carl Gauny, and Laurie Thompson were on the property he was occupying. Loe has an ongoing civil

dispute with Ms. Taylor about ownership of the property. Ms. Taylor has been the record owner of the property since 2011.

Loe confronted the three individuals and video recorded the confrontation. Ms. Thompson attempted to take pictures with her tablet, but Loe knocked it out of her hand. Loe then started aggressively chest bumping Ms. Thompson and yelling at her to get off his property. Mr. Gauny, Ms. Thompson's husband, stepped between them and Loe started bumping Mr. Gauny. The three began to leave, yet Loe continued to bump and strike Mr. Gauny on the back. They also called the police.

On November 2, 2017, the State charged Loe with fourth degree assault and disorderly conduct. Loe requested a jury trial. For the next several months, Loe had repeated conflicts with the attorneys appointed to represent him. Eventually, the court set a trial date of September 10, 2018.

Both parties were present the morning of trial. Almost immediately, Loe requested a continuance. Defense counsel explained that Loe had a heart attack on August 20, three weeks earlier, and he had a doctor's note asking that Loe be excused from court. Defense counsel advised the court that Loe told him he had a doctor's appointment the next day.

The State opposed the request. The State argued the prospective jurors were waiting, the trial should only take one day, and the matter had been delayed for too long. The trial court agreed with the State and expressed optimism the trial could be completed that day, which would allow Loe to attend his appointment.

That morning, the parties selected a jury, and the State began quickly proceeding with its case. Before recessing for lunch, the court told the parties it wanted to review jury instructions with them immediately after the break.

As soon as court reconvened, Loe made a call on his cellular phone. The trial court asked Loe to talk outside the courtroom. Loe exclaimed, "having a heart attack." Report of Proceedings (RP) at 181. The court remarked, "You don't want to disturb what we're doing here. You're welcome to stay if you wish, but—." RP at 181. Loe replied, "I'm leaving the superior courtroom." RP at 181. Loe left the courtroom.

The trial court asked defense counsel how he wished to proceed. Defense counsel responded he was comfortable proceeding forward discussing the jury instructions. For the next several minutes, the parties discussed jury instructions. As they concluded their discussions, a police officer entered the courtroom and handed the clerk a note. The court read the note aloud: "Loe went to the hospital by ambulance." RP at 192. The parties agreed they needed to research the proper procedural steps, and the jury needed to be

informed there was a delay. The court brought the jury in, told them there was a delay, and released them for one hour.

Once court reconvened, the trial judge asked counsel what the options were. The State reviewed applicable authorities and concluded the trial could continue if the court made a preliminary finding that Loe's absence was voluntary.

Defense counsel responded:

> Mr. Loe indicated to me that—from his health care provider that he was—
> he provided a kind of vague letter that says, "Please excuse Tim Loe from
> court due to a medical issue that is requiring further evaluation by a
> specialist," and there's—scheduling conflict—the appointment is vital for
> his patient's health.

RP at 201-02. Defense counsel added that Loe's live-in partner confirmed he had been admitted to the hospital. Defense counsel asked the court to find Loe's absence involuntary.

The State replied that Loe's antics were a ruse because before he got into the ambulance, he filed a complaint against one of the deputies testifying against him.

The trial court, unable to make a finding of voluntary or involuntary absence, adjourned court until the following morning so the parties could discover what happened with Loe. The court recommended to defense counsel that he find out and, preferably

with written confirmation, whether Loe had been admitted to the local hospital, his

condition, and whether he could proceed with trial later that week.

The following morning, Loe did not appear for court. Defense counsel reported he

had a letter from Loe's primary care provider. He read the note out loud:

> [T]his is this an additional letter stating a medical necessity for Tim Loe to be present at his cardiology appointment . . . . He was seen in the emergency room [three weeks ago] for a several-hour history of chest pain, dizziness and extreme–paresthesias . . . . He was found to be in atrial fibrillation with RVR. This was responsive to–diltiazem, which placed him into a regular rhythm, he was discharged on metoprolol for rate control and set up for an appointment [with] cardiology. He was officially diagnosed with paroxysmal atrial fibrillation which does have some increased risk of stroke, deep vein thrombosis and heart attack. Increased stress may increase his risk for the return of his irregular rhythm. Ultimately he needs to be evaluated by–cardiology to determine the cause of the irregular rhythm as well as the risk for future arrhythmia.

RP at 214.

The trial court asked defense counsel where Loe was. Defense counsel responded,

"[M]y understanding is that he's—appointment was at 9:30 this morning, that cardiology

appointment referenced. I've not spoken with him this morning but that's—that's my

understanding." RP at 214-15.

5

The trial court reviewed controlling authority—*Thomson*,[1] *Thurlby*,[2] and *Garza.*[3]

The court explained, consistent with *Thurlby*, it had directed a court administrator to call

the local hospital to inquire about Loe. The administrator reported that although Loe had

been seen at the hospital, he was not admitted.

The court carefully explained its reasons for finding Loe was voluntarily absent:

> [W]hen we resumed court [yesterday] . . . I observed that Mr. Loe was
> standing next to his attorney at counsel table, talking on the phone, loudly
> talking on the phone, and I had directed him to have his conversation
> outside the courtroom. And—he made a comment—I don't remember
> exactly what, but something like, "Well, I'm having a health issue,"
> something about his health, and off he went. It was only a few minutes
> later that the—we were advised that an ambulance had been summoned. I
> do not know whether that ambulance was summoned by Mr. Loe or
> someone else. But—we've had to chase down information for Mr. Loe. It
> hasn't been Mr. Loe offering information about his condition or offering
> verification of the medical necessity for being absent from court.
>        It's difficult because unquestionably a heart or arrhythmia condition
> isn't in the nature of a hangnail, or as in Thurlby, perhaps a choice to
> accompany one's mother [to surgery]. But this is a preliminary
> determination.
>        And I observe also that throughout the case there at least have been
> occasions where—I think back in February of this year, Mr. Loe had—
> Well,—well, he filed numerous declarations within the court file, but filed a
> declaration he had Grave—Grave's Disease, ulcerative colitis and
> autoimmune disorder, low blood sugar, complaining that if he was in court

---

[1] *State v. Thomson*, 123 Wn.2d 877, 872 P.2d 1097 (1994).

[2] *State v. Thurlby*, 184 Wn.2d 618, 359 P.3d 793 (2015).

[3] *State v. Garza*, 150 Wn.2d 360, 77 P.3d 347 (2003).

for too long that his low blood sugar could cause mental fatigue, and evidence itself with confusion.

And, it was just within the last week or so, as I understand, that there was a complaint about this medical condition. I hear now or read here that it was August 20 of 2018. And, you know, we started trial—couple weeks later.

And he did request a continuance the morning of trial, indicating that he had this appointment on Tuesday. And I denied it, with the belief that, you know, that's—that's not only a choice but also—I figure if there was an emergency he would have been immediately in the hospital, number one; and number two, there was no documentation from a provider that there was a—an emergent medical condition.

The fact that Mr. Loe is not in the hospital this morning, not admitted to the hospital, chose to go to the ER yesterday, and has also chosen not to be here this morning or offer any—verification from his physician, is sufficient for me on a preliminary basis to find that his—non-appearance today is a voluntary absence . . . .

RP at 216-18.

The trial resumed despite Loe's absence. The parties examined and cross-examined the State's last two witnesses. The State rested. The parties then examined and cross-examined Loe's sole witness, his live-in partner. The defense rested. The trial court excused the jury, and the parties discussed final jury instructions. They then took their lunch recess.

7

Court resumed at 1:30 p.m. Loe still was absent. The parties gave closing arguments. The jury deliberated then returned with its verdicts. Loe still was absent. The jury found Loe guilty of fourth degree assault and not guilty of disorderly conduct. The court set a sentencing date of October 9, 2019.

Prior to sentencing, Loe submitted a detailed, 10-page typed declaration. In the first 5 or 6 pages, Loe discussed his many grievances with several local officials and agencies, many of which date back years. In the next 2 pages, Loe discussed his grievances concerning this case—including his disagreements with Ms. Taylor, the trial judge's refusals in other cases to grant him anti-harassment protection orders against Ms. Taylor and others, and his dissatisfaction with the various attorneys appointed at public expense to represent him. Loe also noted his displeasure with the deputy sheriff—the State's representative at counsel table—reading his "personal medical records."[4] Clerk's Papers (CP) at 108. In the next 2 pages, Loe discussed his version of the incident, about which he complains he never had a chance to testify. Only toward the very end of

---

[4] This probably refers to the initial note defense counsel relied on when Loe requested a trial continuance.

8

his declaration, did Loe discuss his health.[5]  He concluded his declaration by referring to his trial as a "travesty of justice."  CP at 111.

Nowhere in Loe's detailed 10-page declaration did he explain where he went after the hospital did not admit him the first afternoon of trial or where he went the second day of trial.  Nor did he submit any document confirming he was at a cardiology appointment the second day of trial.[6]

At sentencing, the court confirmed it had reviewed Loe's declaration.  The State recommended a sentence of 364 days with all but 90 days suspended.  The court then listened to defense counsel's recommendation.  The court then asked Loe if he wanted to say anything.  Loe reiterated his version of events and some of his grievances with local officials, but he did not discuss his health or why he was absent from his trial.  The court entered a sentence of 364 days, with all but 3 days suspended.

Loe timely appealed to this court.

---

[5] "I never had a chance to explain any of these things to a jury because I was not healthy enough to do so.  I explained that to my attorney when we started working together.  I explained that both Gina and my health had taken a turn for the worse in recent months and explained the hardships that the court appearances were taking on us." CP at 111.

[6] In Loe's brief, he refers to additional medical records under seal, dated September 12, 2018.  Appellant's Br. at 17.  We find no such records.  The only record is the September 11, 2018 typed note quoted above on page 5.

ANALYSIS

Loe contends the trial court erred by finding his absence voluntary and resuming his trial without him. We disagree.

We review a trial court's decision to proceed with trial in a defendant's absence for an abuse of discretion. *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The right to be present at one's own criminal trial is protected by the Sixth Amendment to the United States Constitution and the due process clauses of the Fifth and Fourteenth Amendments and article I, section 22 of our own state constitution. *Thurlby*, 184 Wn.2d at 624. This right is not absolute—it can be waived. *Id.* "If trial has begun in the defendant's presence, a subsequent voluntary absence of the defendant operates as an implied waiver of the right to be present." *Id.* CrR 3.4(b) also allows the court to continue in a defendant's absence: "The defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial to and including the return of the verdict."

In *State v. Thomson*, our high court developed a three-pronged analysis that a trial court must conduct in order to find the defendant waived his or her right to be present at trial. 123 Wn.2d 877, 881, 872 P.2d 1097 (1994). The trial court must:

> "(1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [make] a preliminary finding of voluntariness (when justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed."

*Id.* (alterations in original) (quoting *State v. Washington*, 34 Wn. App. 410, 414, 661 P.2d 605 (1983). When performing this analysis, the trial court must examine the totality of the circumstances. *State v. Garza*, 150 Wn.2d 360, 367, 77 P.3d 347 (2003).

First, we must determine whether the trial court made a sufficient inquiry into Loe's disappearance. The trial court first inquired about Loe's disappearance with both the State and defense counsel. Then, the trial court recessed trial until the next day so the parties could discover more information about Loe's absence. The next day, the court again heard from both the State and defense counsel. The court even asked a court administrator to contact the hospital to see if Loe had been admitted. The court explained it directed the court administrator to do this because the trial court in *Thurlby* had done this. We conclude the trial court made a sufficient inquiry into Loe's disappearance.

Next, we determine whether substantial evidence supports the trial court's preliminary decision that Loe was voluntarily absent. The court learned that Loe had arrived at the hospital the previous day, but was not admitted. There was no explanation why Loe did not return to court or at least contact his attorney. Nor was there any credible excuse why Loe was absent the second day of trial. Defense counsel said he had not talked to his client, but his "understanding" was Loe was at his 9:30 a.m. cardiology appointment. RP at 214. Defense counsel did not explain the basis of his "understanding," and he did not provide anything in writing to confirm that Loe had a medical appointment. We conclude the trial court's finding that Loe was voluntarily absent from trial is supported by substantial evidence.

Finally, the trial court afforded Loe an opportunity to explain his absence the very next time Loe appeared, which was at his sentencing. The trial court reviewed Loe's lengthy declaration and also gave him an opportunity to speak before imposing sentence. Loe wrote and spoke at length. But neither in his declaration nor during his oral comments did Loe explain where he was during his absences. He had one month between trial and sentencing. Surely if he had a cardiologist or other medical appointment on the second day of trial, he could have obtained something in writing to confirm this. He did not.

12

No. 36378-3-III
*State v. Loe*


We conclude the trial court did not abuse its discretion by resuming trial in Loe's

absence. The court did everything right. It made a sufficient inquiry into Loe's

whereabouts, it made a justified finding of voluntary absence, and it afforded Loe a

timely opportunity to explain himself.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:


_____    _____
Pennell, C.J.                              Andrus, J.[7]

---

[7] The Honorable Beth Andrus is a Court of Appeals, Division One, judge sitting in Division Three under CAR 21(a).