**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 30, 2020

~Stephen, C. J.~
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30, 2020

~Susan L. Carlson~
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 96663-0 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| KEITH ADAIR DAVIS, | ) | |
| | ) | |
| Respondent. | ) | Filed __April 30, 2020__ |
| _____ | ) | |

MADSEN, J.—Keith Davis argues that his right to be present at trial was violated when the trial court found that he voluntarily absented himself, he was removed from the courtroom, and the State proceeded to examine witnesses without Davis in attendance. Because the trial judge did not abuse her discretion in finding that Davis's absence was voluntary, we reverse the Court of Appeals and affirm the trial court.

## BACKGROUND

In January 2014, Keith Davis was arrested for possession of a stolen vehicle. In February 2014, Davis was arrested again for possession of a different stolen vehicle. Police also discovered crack cocaine in Davis's possession after conducting a search

incident to arrest. In March 2014, the State charged Davis with two counts of possessing a stolen vehicle and one count of possession of a controlled substance. On February 6, 2015, Davis waived his right to counsel. During his colloquy with the trial judge, Davis asked how he could request standby counsel. The judge informed Davis he could move for standby counsel but the motions were unlikely to be granted. The court then found Davis knowingly and voluntarily waived his right to counsel, and he proceeded pro se.

Davis obtained an investigator, reviewed discovery materials, and located potential witnesses. The investigator interviewed some of these witnesses and shared his findings with Davis. During pretrial and case setting hearings, Davis continually asked for standby counsel and repeated his frustrations about preparing to defend himself while incarcerated. The court continued to deny standby counsel, noting that such counsel is not constitutionally required and raises ethical issues.

On February 27, 2017, the parties appeared for trial. Davis renewed his request for a continuance. He stated that he was unprepared based on his significant medical conditions,[1] an incomplete investigation, and the alleged withholding of discovery materials from the State. Regarding his medical issues, the court allowed Davis to break every hour during trial to use the restroom and supplied him with sufficient water to meet his needs. Davis agreed. The judge also spoke with Davis's investigator and heard from the prosecution that both the investigation and discovery were complete. The judge then

---

[1] Davis suffered from multiple sclerosis, a ruptured hernia, and an obstructed bowel, and was scheduled for several medical procedures. These conditions caused Davis considerable pain and led to dehydration, requiring him to consume large quantities of water and, consequently, to frequently break to use the restroom facilities.

denied Davis's motion to continue. Davis responded that he was not ready for trial and renewed his request for standby counsel (what he referred to as "hybrid standby" counsel). 1 Record of Proceedings (RP) (Feb. 27, 2017) at 184, 193, 195-96. The court attempted to clarify if Davis meant he was withdrawing as his own counsel and requesting new counsel. Davis stated that he would not go to trial and that the court could "go to trial without [him]"; he said he was "not coming to trial" and "you guys can hold trial without me. Right? You do that? . . . Because I'm not coming." *Id*. at 189-92; *see also id*. at 193, 195-98. The presiding judge filed her written ruling denying Davis's motions to continue and to withdraw from representing himself, and did not grant his request for standby counsel. The judge then recused herself after discovering she had previously worked with Davis's sister. The case was reassigned to Judge Julie Spector.

At the CrR 3.5 hearing, Davis again sought a continuance and attempted to withdraw as his own counsel. The judge denied both motions. In response, Davis became irate. He screamed that he wanted a new judge. The court warned Davis that outbursts and disruptions would lead to his removal. 2 RP (Mar. 2, 2017) at 380-82.[2] Davis said, "You can remove me now. What have we been doing here? I don't even

---

[2] The record indicates that the trial judge warned Davis that should he be removed, he would be able to observe proceedings from another location. However, because Davis interrupted proceedings, the court was unable to finish its statement:

> THE COURT: If you are disruptive I will have you removed from the court. You can observe the court proceedings—
> MR. DAVIS: You can remove me now.

2 RP (Mar. 2, 2017) at 380. Despite the incomplete statement, Davis appears to accept that the warning occurred. *See* Suppl. Br. of Resp't at 3 ("The trial court warned Davis if he continued to be disruptive, he would be removed to observe the court proceedings elsewhere.").

3

want to be here. So remove me. I don't care. I told you that. You can hold your trial without me." *Id.* at 380; *see also id.* at 382 (the court stated that it would begin with jury selection, and Davis replied, "With or without me. . . . I'm not going to be here").

Davis returned to court and represented himself without significant incident until the State commenced its case in chief. The State called two officers involved in Davis's January 2014 arrest for possession of a stolen vehicle. Davis cross-examined the witnesses and eventually asked for a break to use the restroom facilities. After a brief recess, the court reconvened and Davis saw the water on his table had been removed. The court explained that Davis had increased his water intake such that he was using the restroom every 25 minutes instead of every hour as he had agreed. With two witnesses left to examine that day, the court told Davis that he would receive no more water. Davis then began a "tirade of expletives, pounding on the table with his fists, and yelling at an extremely loud volume, . . . at one point scream[ing] 'F**k you, Spector!' to the Court." Clerk's Papers (CP) at 141; Tr. of Proceedings (Mar. 7, 2017) (TP) at 200. Davis was warned that "he would be removed from the courtroom" "if he was going to continue to raise his voice and curse." CP at 142.

The State attempted to proceed with questioning witnesses, but Davis refused to cease his outbursts. The judge temporarily cleared the jury. Davis repeatedly said, "You can hold your trial without me," and the court replied, "I'm going to do that." TP at 205. Davis went as far as to remark, "Thank you. Thank you. Just go ahead with your kangaroo court . . . . I'm done with it." *Id.* at 205-06. During this exchange, Davis

4

shouted at the "top of his lungs, swearing" and apparently moved to exit the courtroom. *Id*. at 208; CP at 142. The judge stopped Davis in order to make an oral ruling. She found that Davis was voluntarily absenting himself from the proceedings under *State v. Garza*, 150 Wn.2d 360, 365-66, 77 P.3d 347 (2003), noting that Davis intentionally drank more water in order to delay trial with bathroom breaks, often during critical portions of witness testimony. The court's written ruling found that Davis's outbursts grew "so loud that . . . the courtroom across the hall . . . was forced to recess because the parties were unable to hear their own witness." CP at 142. "The volume was such that the Court was unable to speak over [Davis]." *Id*.

After Davis left the courtroom, the jury returned and the State resumed its direct examination. The State questioned officers involved in Davis's February 2014 arrest, asking about the cocaine discovered in his possession and his voluntary statements given after arrest. Davis was not present to cross-examine either witness. He was absent for approximately 50 minutes of trial.

The following day, Davis returned. The court warned him that any profanity or disruptions would result in his removal. Davis agreed, though he continued to interrupt and ask for standby counsel, which the court denied. Despite Davis's combative behavior, the trial proceeded with Davis present. Davis was convicted on all counts.

On appeal, Davis argued that the trial court violated his right to be present when it removed him from the courtroom. The Court of Appeals agreed that he was removed but concluded the trial court was not required to consider less restrictive means before

5

removing him. *State v. Davis*, 6 Wn. App. 2d 43, 54-57, 429 P.3d 534 (2018). Davis also asserted he was without representation when the State examined witnesses testifying to his February 2014 arrest and therefore violated his Sixth Amendment right to representation. *Id*. at 62. The Court of Appeals agreed and reversed Davis's convictions for possession of a stolen vehicle and possession of a controlled substance, and remanded for a new trial. *Id*. at 62-63. The State sought review here, asking us to review whether a defendant may voluntarily absent him- or herself from trial based on disruptive behavior and to clarify the proper standard of review for this inquiry. We granted the State's petition. *State v. Davis*, 192 Wn.2d 1023 (2019).

ANALYSIS

The State argues that the trial court did not err in finding that Davis waived his right to be present at trial by voluntarily absenting himself. We agree.

The Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, as well as article I, section 22 of our state constitution, guarantee the right of the criminal defendant to be present at his or her own trial. *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015) (citing *State v. Thomson*, 123 Wn.2d 877, 880, 872 P.2d 1097 (1994)). This right is not absolute, however. *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991).

A criminal defendant may waive the right to be present so long as the waiver is knowing and voluntary. *Thurlby*, 184 Wn.2d at 624 (citing *State v. Rice*, 110 Wn.2d 577, 619, 757 P.2d 889 (1988)). A waiver of the right to be present may be express or

implied. *Id.* (citing *Thomson*, 123 Wn.2d at 881). If a trial has begun in the defendant's presence, a subsequent voluntary absence of the defendant operates as an implied waiver of the right to be present. *Id.* If the court finds this waiver, it is free to exercise its discretion to continue the trial without further consideration. *Thomson*, 123 Wn.2d at 881.

The United States Supreme Court and this court have held that a defendant's persistent, disruptive conduct can constitute a voluntary waiver of the right to be present. *State v. Chapple*, 145 Wn.2d 310, 318, 36 P.3d 1025 (2001) (citing *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)). The Supreme Court has held that

> a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Allen*, 397 U.S. at 343 (footnote omitted). While courts indulge in reasonable presumptions against the loss of constitutional rights, trial judges who are confronted with disruptive, "contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. *No one formula* for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id*. (emphasis added).

Previous cases analyzing whether an absence was voluntary, and a defendant thus waived the right to be present, have most often arisen when a defendant fails to appear

7

during trial. *E.g.*, *Garza*, 150 Wn.2d at 367; *see also Thurlby*, 184 Wn.2d at 624-27. To determine whether an absence is a waiver, courts have reviewed a number of factors: inquiring into the circumstances of the failure to appear, making a preliminary finding of voluntariness (when justified), and providing the defendant an adequate opportunity to explain his or her absence when returned to custody and before imposing a sentence. *Garza*, 150 Wn.2d at 367 (quoting *Thomson*, 123 Wn.2d at 881). This provides ample protection of the right to be present because the inquiry ensures that the court will examine circumstances of a defendant's absence and conclude the defendant chose not to be present, as well as providing an opportunity for the defendant to explain his or her disappearance and rebut the finding of voluntariness. *Id*.

While the factors established in *Garza* and *Thomson* are properly applied to defendants who fail to appear during trial, they are less useful in the present case—that is, when a defendant appears for trial, disrupts court procedure, and announces his wish to leave the courtroom. To be sure, both situations require the court to determine whether a defendant has waived the right to be present; but the circumstances surrounding a disappearing defendant differ from those of a severely disruptive defendant. Unlike a defendant who fails to appear, leaving a trial court to speculate as to why, a combative defendant hardly has need to explain his or her absence upon returning: the court observed firsthand the disruptive behavior or heard the defendant's intention to absent him- or herself. Thus, while the question of whether a defendant's absence was voluntary remains part of the waiver analysis for both types of defendants, the considerations

8

underlying that determination differ. Accordingly, we agree with the Court of Appeals below that the *Garza* and *Thomson* factors are not always applicable: "These factors are *most applicable* to situations where a defendant does not appear for court or does not return to court after a removal. As such, they are not readily applicable to the facts in this case." *Davis*, 6 Wn. App. 2d at 55 (emphasis omitted).

Nevertheless, *Garza* and *Thomson* provide guidance because they provide the test necessary to answer the primary question before us: whether Davis waived his right to be present.[3] *See Garza*, 150 Wn.2d at 367; *Thomson*, 123 Wn.2d at 881.[4] This determination depends on the totality of the circumstances. *Garza*, 150 Wn.2d at 367 (citing *Thomson*, 123 Wn.2d at 881). We review decisions involving waiver of the right to be present for abuse of discretion. *Id.* at 365-66; *see also State v. Dye*, 178 Wn.2d 541, 547-48, 309 P.3d 1192 (2013) (trial courts "ha[ve] broad discretion to make a variety of

---

[3] The dissent criticizes the majority for not devising a new test. Dissent at 12. But a new test is not needed. The inquiry is whether the defendant has waived his right to be present. *Garza*, 150 Wn.2d at 367. The test for waiver of presence is whether the defendant knew of his right to be present and that he voluntarily waived that right. That can be determined only by his conduct and words. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). In this case, Davis did not follow through on his threats to leave—until he did. He was aware of his right to be present; the trial court emphasized the importance of his presence, gave a warning that his conduct would result in a waiver, and invited the defendant to reassert his right to be present whenever he wished to do so. "A person in custody, as any person, can voluntarily choose to be absent." *People v. Gutierrez*, 29 Cal 4th 1196, 1208, 63 P.3d 1000, 130 Cal. Rptr. 2d 917 (2003). As Davis did here.

[4] The Court of Appeals' reliance on the foreign decision, *State v. Menefee*, 268 Or. App. 154, 160-64, 341 P.3d 229 (2014), was unnecessary as our own case law provides the necessary guidance. Further, *Menefee* is distinguishable from the current case. In *Menefee*, the defendant asked to leave, then returned to court, and when he argued irrelevant law and was told to stop or be removed, the defendant asked to stay. *See id.* at 163. Unlike *Menefee*, Davis did not ask to stay—indeed, he asked repeatedly to *leave* the courtroom. *E.g.*, 1 RP (Feb. 27, 2017) at 191-92, 193, 195-98; 2 RP (Mar. 2, 2017) at 380.

trial management decisions, ranging from 'the mode and order of interrogating witnesses and presenting evidence,' to the admissibility of evidence, to provisions for the order and security of the courtroom" (footnotes omitted) (quoting ER 611(a))). The court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *Garza*, 150 Wn.2d at 366.

Davis argues that he did not waive his right to be present, he was involuntarily removed, and the trial court erred in failing to consider less restrictive alternatives to removal. *Black's Law Dictionary* defines "involuntary" as "[n]ot resulting from a free and unrestrained choice; not subject to control by the will." BLACK'S LAW DICTIONARY 991 (11th ed. 2019). Unsurprisingly then, the phrase "involuntary removal" means that a defendant is removed against his or her will.

This definition comports with our case law on defendants removed from trial proceedings based on their disruptive behavior. *E.g.*, *Chapple*, 145 Wn.2d at 320. In *Chapple*, the defendant interrupted the court and became increasingly hostile. *Id*. at 315. He was eventually removed. The court worked with the defense attorney to find a way for Chapple to participate in trial. *Id*. at 316. After hearing testimony from corrections officers on Chapple's "size and extraordinary physical strength," including that he could break handcuffs, the court determined he should be excluded from the remainder of trial. *Id*. at 316-17. But unlike Davis, Chapple did not state that he wished to leave the proceedings. Davis, on the other hand, insisted that he was "done" and "not coming to

trial," 1 RP (Feb. 27, 2017) at 190-91. He knew that proceedings would continue without him and did not want to be there.

Far from expressing this desire only once in an angry tirade, Davis stated numerous times that he did not plan to be at court and that he wanted to leave. *E.g.*, *id.* at 191-92; *see also id.* at 193, 195-98. For example, prior to jury selection, the court and Davis engaged in the following exchange:

> THE COURT: Mr. Davis, Monday morning, you will have three days—
> MR. DAVIS: What about it?
> THE COURT: We will pick a jury.
> MR. DAVIS: I don't care what you do. I really don't. I'm going to continue to survive with this disease.
> THE COURT: If you are disruptive I will have you removed from the court. You can observe the court proceedings—
> MR. DAVIS: *You can remove me now. What have we been doing here? I don't even want to be here. So remove me. I don't care. I told you that. You can hold your trial without me. Who cares.*
> THE COURT: Well, if you're disruptive we may have to—
> MR. DAVIS: Well do that. I don't care. Ask me do I care. I don't care. *You can hold your trial at Woodland Park Zoo. Do that.*
> . . . .
> MS. ANDERSON: 9:00 a.m. on Monday, Your Honor?
> THE COURT: We will begin jury selection.
> MR. DAVIS: *With or without me.*
> THE COURT: Correct.
> MR. DAVIS: *I'm not going to be here.*

2 RP (Mar. 2, 2017) at 380-82 (emphasis added). Involuntary removal constitutes removal against one's will. But as the record indicates, the defendant here was not removed involuntarily—his removal was purely voluntary. Davis asked to leave the court, and the trial judge granted his request. Disorderly behavior and consistent requests to leave the courtroom demonstrate that Davis waived his right to be present. We note

11

that while disruptive behavior alone may justify removal, here, Davis's insistence throughout trial that he did not wish to be there, wanted to leave, and indeed at one point physically moved to leave, as well as his disruptive behavior, demonstrates Davis voluntarily and knowingly left the courtroom, waiving his right to be present.[5]

Davis relies on *Chapple* to argue that the court erred by failing to consider less restrictive alternatives to removal. In *Chapple*, this court dealt with a disruptive defendant who was involuntarily removed. For such defendants, we have held that courts must make accommodations and consider less restrictive alternatives. *E.g.*, *Chapple*, 145 Wn.2d at 322-24 (trial court determined a defendant's strength, potential for violence, and attitude precluded him from utilizing less restrictive alternatives and removed him from the courtroom); *DeWeese*, 117 Wn.2d at 373 (disruptive defendant was warned and removed to another room to watch the trial on television).

If the trial judge had made the decision to involuntarily remove Davis based on his disruptive behavior, the right to be present requires the trial court to consider less restrictive alternatives, such as those outlined in *Chapple*, 145 Wn.2d at 322-24, and *DeWeese*, 117 Wn.2d at 373. But here, Davis expressed his desire to leave the proceedings himself, and the judge allowed him to do so. Thus, what distinguishes Davis's case from other disruptive defendants is, as our standard of review indicates,

---

[5] The dissent's approach encourages gamesmanship. This defendant did everything in his power to disrupt and delay the trial. He was fully aware of his right to be present and that his conduct would result in his waiver of that right. By reversing his conviction, when he was fully capable of conforming his conduct when he wanted to, the dissent would give Mr. Davis exactly what he sought—further delays in his trial.

voluntariness.  *See Thomson*, 123 Wn.2d at 881 ("Under the voluntary waiver approach, the court only need answer one question: whether the defendant's absence is voluntary.").

In this case, the trial court did not abuse its discretion in finding that Davis waived his right to be present.  The record shows that Davis wanted to leave the courtroom and the trial judge accommodated him.  Davis asked and later yelled, repeatedly, that he did not "even want to be here.  So remove me. I don't care. I told you that.  You can hold your trial without me."  2 RP (Mar. 2, 2017) at 380; *see also* TP at 205 ("You can hold your trial without me.").  When the trial court found that Davis intended to delay proceedings by increasing his water intake and increasingly using the restroom facilities, Davis became enraged, and he reaffirmed his desire to leave:  "Do that.  Thank you.  Thank you.  Thank you.  Just go ahead with your kangaroo court . . . .  I'm done with it."  TP at 205-06.  The court then reminded Davis that he had another of the State's witnesses to cross-examine, but Davis stated again that he was done.

Although the court would have been justified in taking action based on Davis's disruptive conduct, the totality of circumstances show that Davis's repeated statements that he wished to leave amounted to a waiver.  The trial court properly exercised its discretion when it permitted a contumacious and stubbornly defiant defendant who insisted on leaving the courtroom to absent himself from the proceedings.  *See Allen*, 397 U.S. at 343.  Maintaining order in the courtroom is within the discretion of the trial judge, and the judge properly exercised it here.  *See DeWeese*, 117 Wn.2d at 380 (citing *Burgess*

13

*v. Towne*, 13 Wn. App. 954, 960, 538 P.2d 559 (1975)).  Accordingly, we hold that Davis

waived his right to be present at trial.[6]

## CONCLUSION

Davis repeatedly stated that he did not want to be in court, that he was done, and

that he wished to leave.  Coupled with his disruptive outbursts that culminated in an

abusive shouting match with the trial court, Davis obtained what he consistently told the

court he wanted: leaving the proceedings.  We hold that Davis waived his right to be

present at trial.  Accordingly, we reverse the Court of Appeals and affirm the trial court's

ruling on voluntary absence.

---

[6] Davis further contends that involuntary removal violated his constitutional rights to representation and self-representation by precluding him from cross-examining witnesses.  But as we have previously explained, Davis was not removed; he left the courtroom voluntarily. Similar to *DeWeese*, the trial judge here told Davis that he still had witnesses to cross-examine, yet Davis stated he wanted to leave the courtroom.  As we stated in *DeWeese*, the right to waive counsel does not include a right to be immune from the consequences of self-representation.  117 Wn.2d at 382.  Davis knew court would continue without him and nonetheless insisted on leaving.  Continuing court or providing counsel to Davis would not only reward his disruptive conduct but also provide him counsel—which he waived.  Davis's waiver was found knowing and voluntary, and he presents no reason to doubt that finding here.  Therefore, court did not err when it did not continue proceedings or appoint counsel in Davis's absence.

No. 96663-0

Madsen, J.

WE CONCUR:

González, J.

_____
Johnson, J.

_____
Owens, J.

_____
Wiggins, J.P.T.

Yu, J.

15

*State v. Davis (Keith Adair)*
(Stephens, C.J., dissenting)

No. 96663-0

STEPHENS, C.J. (dissenting)—This case is about how trial courts balance respect for the constitutional rights of criminal defendants with the need for orderly proceedings. Keith Davis was defending himself pro se when the King County Superior Court removed him from trial after an abusive outburst. But the trial court allowed the State to continue prosecuting its case against Davis—even as the defense table sat empty—without considering alternatives that would better protect Davis's constitutional rights, which our precedent requires.

Today's majority affirms the trial court, justifying its decision by recasting Davis's involuntary removal as a voluntary absence. But neither the transcript of the proceedings nor the trial court's written findings support the majority's reading of the record. The majority's analysis blurs the legal standards for voluntary absence and involuntary removal, bypassing the constitutional protections built into those

standards and creating no clear rules for lower courts to follow in the future. Because the trial court removed Davis without considering less restrictive alternatives, it abused its discretion. I respectfully dissent.

ANALYSIS

Removing a pro se defendant from the courtroom during trial risks undermining the "'very premise of our adversary system of criminal justice'" by leaving the defense table empty while the State brings its prosecutorial might to bear. *United States v. Cronic*, 466 U.S. 648, 655, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (quoting *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975)). "A criminal defendant has a constitutional right to be present in the courtroom at all critical stages of the trial arising from the confrontation clause of the Sixth Amendment to the United States Constitution, . . . [as well as article I, section 22 of t]he Washington State Constitution." *State v. Chapple*, 145 Wn.2d 310, 318, 36 P.3d 1025 (2001). But that right is not absolute. *Id.* A defendant can lose the right to be present by "voluntarily absenting himself from proceedings" or by engaging in "disruptive behavior" severe enough to justify removal. *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). Because the factual circumstances involved in the absence of a defendant versus the removal of a defendant are different, this court has adopted distinct standards for each.

When a defendant is absent for unknown reasons, Washington courts use a three-step analysis to determine whether their absence constitutes a waiver of their right to be present. *State v. Garza*, 150 Wn.2d 360, 367, 77 P.3d 347 (2003). ("'The trial court will (1) [make] sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) [make] a preliminary finding of voluntariness (when justified), and (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed.'" (alterations in original) (internal quotation marks omitted) (quoting *State v. Thomson*, 123 Wn.2d 877, 881, 872 P.2d 1097 (1994))).

When a defendant who is physically present in the courtroom is removed by the trial court due to disruptive behavior, a different framework applies. *See DeWeese*, 117 Wn.2d at 381 (distinguishing removal and voluntary absence). *Compare Chapple*, 145 Wn.2d at 320 (creating involuntary removal standard), *with Thomson*, 123 Wn.2d at 881 (creating voluntary absence standard). Before removing a criminal defendant and proceeding in his absence, the trial court must (1) give the defendant an adequate warning that they will be removed if they continue to disrupt proceedings, *Chapple*, 145 Wn.2d at 321, (2) consider whether the severity of the defendant's disruptive conduct is sufficient to justify removal, *Id.* at 322, (3) consider the least severe means of preventing further disruptions in order

to preserve the defendant's rights, *id.* at 323, and (4) give the removed defendant the opportunity to return "'as soon as the defendant is willing to conduct [themselves] consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.'" *Id*. at 325 (quoting *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)).

Before deciding whether a criminal defendant has waived their right to be present, the trial court "must indulge every reasonable presumption against the loss of [the defendant's] constitutional rights." *Allen*, 397 U.S. at 343 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)). This is true for both voluntary absence and involuntary removal. *See State v. Thurlby*, 184 Wn.2d 618, 626, 359 P.3d 793 (2015) ("In performing [the voluntary absence] analysis, the trial court must examine the totality of the circumstances and indulge every reasonable presumption against waiver" of the defendant's constitutional rights (citing *Garza*, 150 Wn.2d at 367)); *Chapple*, 145 Wn.2d at 324 (While "certain circumstances may warrant the defendant's complete removal," the defendant's "constitutional rights to be present at trial" "should be afforded great protections.").

The majority decides this case falls in a twilight zone between voluntary absence and voluntary removal because Davis said, "You can hold your trial without me" during his outburst, immediately before the trial court removed him. Tr. of

Proceedings (TP) (Mar. 7, 2017) at 205. But the majority's narrow focus on that sentence ignores significant evidence in the record that Davis was not actually waiving his right to be present and that the trial court's decision to remove him had nothing to do with any such waiver. Even if the record supported the majority's view, the majority errs by failing to identify, adopt, or apply any standard to give courts guidance in this twilight zone. I believe the majority's approach risks abandoning the constitutional protections built into our voluntary absence and involuntary removal standards, contradicting the United States Supreme Court's command that trial courts "must indulge every reasonable presumption against the loss of [the defendant's] constitutional rights." *Allen*, 397 U.S. at 343 (citing *Johnson*, 304 U.S. at 464). I address each error in turn.

I. The Majority Ignores Significant Evidence That Neither Davis Nor the Trial Court Thought Davis Was Actually Asking To Leave Trial

The majority's view of the case boils down to a single line in its opinion: "Davis asked to leave the court, and the trial judge granted his request." Majority at 11. But a thorough examination of the record directly undermines that view.

A. The Full Record Suggests Davis's Statement Was Not a Sincere Request To Leave Trial

The majority bases its opinion on the idea that Davis's statement, "You can hold your trial without me" constituted a waiver of his right to be present, which the

-5-

trial court simply granted. To support its theory that the trial court removed Davis pursuant to this alleged waiver—and not because of the rest of his disruptive behavior—the majority points out that Davis "[insisted] throughout trial that he did not wish to be there, wanted to leave, and indeed at one point physically moved to leave."[1] Majority at 12. But the majority conveniently glosses over the fact that Davis never followed through on any of his prior statements indicating that he would be absent from trial.

On February 27, Davis told the trial court, "I'm not coming to trial." 1 Record of Proceedings (RP) (Feb. 27, 2017) at 191. But on February 28, Davis was in his place and ready to proceed. Again on March 2, Davis told the trial court, "You can hold your trial without me." 2 RP (Mar. 2, 2017) at 380. But the next court day, Davis was again present and fully participated in voir dire. Finally, on March 7, in the midst of his abusive outburst toward the trial court, Davis repeated, "You can hold your trial without me." TP (Mar. 7, 2017) at 205. This time, the trial court

---

[1] The record does not clearly indicate that Davis physically moved to leave. Davis was in custody and wheelchair bound; he relied on corrections officers to travel to and from the courtroom every day. The majority may be referencing the trial court's admonishment of corrections officers during removal: "I need him present so I can make the record, so don't take him out yet." TP (Mar. 7, 2017) at 206. But that statement does not indicate whether Davis was trying to leave the courtroom of his own accord or corrections officers simply started to remove him too early. And nothing in the trial court's written findings suggests Davis tried to leave the courtroom prior to his removal.

replied, "I'm going to do that," *id.*, and "You're now removed from the court," *id.* at 208. But yet again, Davis was back at counsel table on March 8, TP (Mar. 8, 2017) at 241, and did not miss another moment of his trial.

This pattern of behavior strongly suggests Davis did not intend his statements to effect a voluntary waiver of his right to be present. Had Davis's requests to voluntarily absent himself from trial been sincere, he would have followed through on them the first time. Or the second time. Or the third time. But despite his bluster, Davis never voluntarily absented himself from trial. His only absence came when he was removed by the trial court. When given the choice, Davis always remained present.

Courts must "indulge every reasonable presumption against the loss of constitutional rights." *Allen*, 397 U.S. at 343 (citing *Johnson*, 304 U.S. at 464). When a defendant repeatedly threatens not to attend trial but nevertheless appears and conducts his own defense every day, it is reasonable to presume that his bombast is not intended to constitute a waiver of his right to be present.

Of course, it is difficult for this court to determine exactly what happened at trial from a cold record. That is why appellate courts give significant deference to the trial courts' view of proceedings. *See Garza*, 150 Wn.2d at 350 ("[B]ecause the determination of whether a defendant was voluntarily absent from trial is dependent

upon an inquiry into the facts and the totality of the circumstances, the trial court is in a better position to pass on the question."). Here, the trial court's own words make clear that it decided to remove Davis because of his disruptive behavior and not because the court believed Davis was voluntarily absenting himself from trial.

B. The Trial Court's Oral and Written Findings Indicate Davis Was Removed for Disruptive Behavior, Not Because He Asked To Leave

If the majority were correct that the trial court was simply granting Davis's request to leave the court, one would expect the trial court would have said so in its oral or written findings. But it did not.

Instead, the trial court made clear that it was removing Davis due to his disruptive behavior. *See* TP (Mar. 7, 2017) at 207 ("This is about you disrupting the trial, delaying the trial."), 208 ("You're now removed from the court."); TP (Mar. 8, 2017) at 244 ("I'm telling you what my orders are, and if you cannot follow them, you will be removed from the courtroom, as you were yesterday."). The trial court invoked the voluntary absence standard this court articulated in *Garza*, but only in passing. And that invocation was undermined by the trial court's very next words, which justified its decision by describing Davis's disruptive behavior. *See* TP (Mar. 7, 2017) at 208 ("I am finding that he is voluntarily absenting himself from the rest of these proceedings under State vs. Garza, G-A-R-Z-A, and the record should

reflect that he continues to speak on top of his lungs, swearing, accusing me of all kind[s] of things.").

The trial court's written findings further confirm it removed Davis due to his disruptive behavior, not any request to leave. The trial court even labeled its written summary of the events leading to Davis's removal as "FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT VOLUNTARILY ABSENTING HIMSELF FROM TRIAL **DUE TO HIS DISRUPTIVE BEHAVIOR**." Clerk's Papers (CP) at 140 (emphasis added). Those findings describe how the trial court explained "that if [Davis] was going to continue to raise his voice and curse at the Court, then he would be removed from the courtroom." CP at 142. When Davis continued his "tirade," the trial court "ordered the jail officers to remove him from the courtroom[ and t]he officers did so." *Id.* The findings also describe how "the Court warned [Davis] about his behavior" again the next morning and "informed him that if he continued to behave that way, he would again be removed from the courtroom." *Id.* Though the trial court stated that Davis "voluntarily absented" himself, *id.*, the rationale for its decision was based on his disruptive behavior and not on any request to leave the courtroom.

Nowhere does the trial court say that it removed Davis pursuant to his request to leave the courtroom—the trial court's findings do not even mention Davis's

statement that "You can hold your trial without me." TP (Mar. 7, 2017) at 205. The trial court's only stated rationale for Davis's removal is the severity of his disruptive behavior. The majority's conclusion to the contrary does not align with the trial court's own findings and is not persuasive.

But even if the majority's view were supported by the record, I could not join its opinion because it fails to identify, adopt, or apply any legal standard to its analysis of Davis's so-called voluntary absence.

II. The Majority Fails To Identify, Adopt, or Apply Any Legal Standard To Govern When or Whether Defendants May Voluntarily Absent Themselves by Their Disruptive Conduct

The majority's analysis begins with a discussion of the legal standards governing whether a criminal defendant's voluntary absence constitutes a waiver of their right to be present. But the majority quickly abandons the substance of those standards because "the factors established in *Garza* and *Thomson* are properly applied to defendants who fail to appear during trial, [so] they are less useful in the present case—that is, when a defendant appears for trial, disrupts court procedure, and announces his wish to leave the courtroom." Majority at 8. Instead, the majority relies on the voluntary absence standards in *Garza* and *Thomson* for "guidance." Majority at 9. But the guidance the majority takes from those cases borders on nonexistent:

> Nevertheless, *Garza* and *Thomson* provide guidance because they provide the test necessary to answer the primary question before us: whether Davis waived his right to be present. This determination depends upon the totality of the circumstances.

*Id.* (footnotes and citations omitted) (citing *Thomson*, 123 Wn.2d at 881; *Garza*, 150 Wn.2d at 367). That is it—the majority gleans no further guidance from our precedents than to look at the totality of circumstances. So it is no surprise that the majority concludes "the totality of circumstances show that Davis's repeated statements that he wished to leave amounted to a waiver." Majority at 13.

To be fair, it is true that the *Garza* and *Thomson* standards direct trial courts to weigh the totality of the circumstances. But this court has identified particular factors trial courts must weigh for a reason: these factors are how Washington courts follow the United States Supreme Court's command to "indulge every reasonable presumption against the loss of constitutional rights." *Allen*, 397 U.S. at 343 (citing *Johnson*, 304 U.S. at 464); *see Garza*, 150 Wn.2d at 367 ("In performing the analysis, the court indulges every reasonable presumption against waiver." (citing *Thomson*, 123 Wn.2d at 881)).

"'[T]he 3-prong voluntariness inquiry ensures the court will examine the circumstances of the defendant's absence and conclude the defendant chose not to be present at the continuation of the trial'" before proceeding without the defendant. *Garza*, 150 Wn.2d at 367 (quoting *Thomson*, 123 Wn.2d at 883). This inquiry also

"'provides an opportunity for the defendant to explain [their] disappearance and rebut the finding of voluntary absence before the proceedings have been completed.'" *Id*. (quoting *Thomson*, 123 Wn.2d at 883). But today's majority abandons the specific factors this court designed to "indulge every reasonable presumption against the loss of constitutional rights," *Allen*, 397 U.S. at 343 (citing *Johnson*, 304 U.S. at 464), undermining the very purpose of our voluntary absence standard.

Worse, the majority fails to articulate any new standard that could better protect a criminal defendant's constitutional rights in this twilight zone between traditional voluntary absence and involuntary removal. This is despite the fact that the Court of Appeals here relied on foreign decisions because "Washington case law has not yet addressed whether and how a defendant may voluntary absent himself or herself by requesting to leave the courtroom." *State v. Davis*, 6 Wn. App. 2d 43, 54, 429 P.3d 534 (2018). Given the majority's view of the record, this case would appear to be an ideal opportunity to provide guidance to lower courts confronting similar situations in the future. But the majority declines to provide needed guidance, reasoning that "our own case law provides the necessary guidance." Majority at 9 n.4. For the reasons explained above, I disagree.

Today's decision departs from our precedents, provides no clear guidance to lower courts, and will have particularly dire consequences for pro se defendants. When a pro se defendant is deemed to have waived their right to be present, their removal necessarily jeopardizes other rights—including the right to confront witnesses against them. As the United States Supreme Court has observed:

> The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the "accuracy of the truth-determining process." It is, indeed, "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *But its denial or significant diminution calls into question the ultimate "integrity of the fact-finding process" and requires that the competing interest be closely examined.*

*Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (emphasis added) (citations and internal quotation marks omitted) (quoting *Dutton v. Evans*, 400 U.S. 74, 89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970); *Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *Berger v. California*, 393 U.S. 314, 315, 89 S. Ct. 540, 21 L. Ed. 2d 508 (1969)).

Here, Davis's removal significantly undermined his right to confront the witnesses against him. The trial court removed Davis without giving any consideration to alternatives that could preserve that right. Immediately after

removing Davis, the trial court directed the State to continue presenting its witnesses in Davis's absence. These witnesses testified to crucial elements of the State's case against Davis arising from his February 2014 arrest, including details of his behavior, his statements to officers, the nature of the evidence against him, and more. Davis had no opportunity to cross-examine these witnesses "to test the[ir] perception, memory, and credibility." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing *State v. Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982)). The majority's analysis does not even acknowledge this significant impact on Davis's constitutional rights.

I would hold that the trial court abused its discretion by removing Davis without considering any alternatives that could better protect Davis's constitutional rights, including his right to confront the witnesses against him. Alternatives may have existed. The trial court could have, for example, placed Davis "in a room with a video monitor which allowed him to follow the case so that he would be able to return to court to conduct cross examination of prosecution witnesses." *DeWeese*, 117 Wn.2d at 381. "Since *Allen*, many courts have managed to maintain contact between a disruptive defendant and [ongoing proceedings] through various forms of technology, including interactive video and telephone systems." *Chapple*, 145 Wn.2d at 324 (citing *State v. Gillam,* 629 N.W.2d 440 (Minn. 2001) (giving

-14-

defendant option of using room with interactive video capabilities); *United States v. Ives,* 504 F.2d 935, 938 (9th Cir. 1974) (utilizing special phone system connecting defense counsel with defendant's cell), *vacated on other grounds*, 421 U.S. 944, 95 S. Ct. 1671, 44 L. Ed. 2d 97 (1975); *United States v. Munn*, 507 F.2d 563, 567 (10th Cir. 1974) (allowing defendant to hear trial through broadcast system)).  I would hold the trial court's failure to consider such alternatives constitutes an abuse of discretion.[2]  Accordingly, I would remand for a new trial on the charges arising from Davis's February 2014 arrest.

## CONCLUSION

The trial court did not believe it was granting Davis's voluntary request to be absent from trial—it removed him for disruptive behavior.  *See* CP at 140 ("[T]he defendant was removed from the courtroom due to his behavior.").  The Court of Appeals recognized as much.  *See Davis*, 6 Wn. App. 2d at 54 ("Davis asserts the trial court removed him from trial for disruptive behavior. . . . We agree with Davis.").  Because the trial court clearly explained it removed Davis due to his

---

[2] The majority claims that requiring the trial court to consider such alternatives "would give Mr. Davis exactly what he sought—further delays in his trial."  Majority at 12 n.5.  But requiring the trial court to consider alternatives is not about what Mr. Davis sought—it is about what our constitution and precedents require.  *See Chapple*, 145 Wn.2d at 323.  A short delay while the trial court considers alternatives to complete removal is a small price to pay to protect the fundamental rights of the criminally accused.

disruptive behavior, I would hold it to that standard.  And because the trial court's

removal order does not meet the applicable constitutional minimums, I would hold

it abused its discretion.  Accordingly, I respectfully dissent.

Stephens, C.J.

Gordon McCloud, J.

Fairhurst, JPT