# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59870-1-II |
| Respondent, | |
| v. | |
| GREGORY LEE BONDS, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Gregory Lee Bonds appeals his conviction for one count of possession of a stolen vehicle. He argues for the first time on appeal that he was denied his right to be present at critical stages of his criminal trial. Relatedly, he alleges that the court erred in concluding that he was voluntarily absent. Bonds also argues that he received ineffective assistance of counsel because his attorney failed to object to the continuation of the proceedings without Bonds's presence. Because the court did not abuse its discretion in concluding Bonds was voluntarily absent, and he did not receive ineffective assistance of counsel, we affirm his conviction.

## FACTS

### I. BACKGROUND

In November 2022, Cheyenna Monk's black Kia K5 was stolen. Bonds was arrested and charged with unlawful possession of a stolen vehicle.

II.     FIRST TRIAL DATE

Bonds was released from custody on his personal recognizance on January 24, 2023.  His trial was initially scheduled for May 2.  On the morning of May 2, the court convened for a status hearing at 9:30 a.m.  Though Bonds had signed an order which indicated that "his presence was required," and the date of trial listed on the order was May 2, Bonds was not present.  1 Rep. of Proc. (RP) at 6.  Defense counsel explained that they had not heard from Bonds, and they could not find Bonds anywhere in the courthouse.  The court recessed to provide an opportunity for Bonds to appear, but he never showed up.  After waiting approximately six hours, the court issued a bench warrant.  Bonds was later arrested on the warrant on May 10.

III.    SECOND TRIAL DATE

The court convened for the second trial date on Friday, July 20.  Bonds appeared at the second trial date, but there were several instances of tardiness.  For example, after empaneling the jury, the court recessed before proceeding with a CrR 3.5 hearing.  Even though the court explained they were taking a ten-minute recess, Bonds was fifteen minutes late.  When the court inquired about Bonds whereabouts, Defense counsel acknowledged that Bonds "doesn't have the best track record of being on time."  2 RP at 189.  When Bonds returned to court, Bonds explained that his tardiness was a result of the mistaken belief that the proceedings had concluded for the day.  The court admonished Bonds, explaining that he could not be late every session and stressed that he needed to be early to the proceedings.

On the second day of trial, Bonds showed up on time.  Defense counsel made the court aware that Bonds nodded off several times during the discussion regarding the motions in limine.  Defense counsel explained that Bonds was taken to the hospital over the weekend due to a small

head injury.[1]  Defense counsel, however, indicated Bonds was okay to move forward with trial and that counsel would notify the court if they had any concerns.

After the State rested its case, the court recessed for approximately 15 minutes.  Again, Bonds was late returning from recess.  Bonds explained that he "was on a call with the hospital." 3 RP at 335.

After defense counsel rested its case, the court adjourned for the day.  The court specifically reminded Bonds that he needed to be at the next trial day before 9:00 a.m.

IV.     BONDS'S DISAPPEARANCE

Bonds never showed up to the third day of trial.  At the beginning of the proceedings, while the jury was still absent, the court noted that Bonds was not in attendance.  The State explained that the court needed to consider the factors articulated in *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015), before concluding that Bonds was voluntarily absent.  The court then recessed to allow for both the State and defense counsel to inquire into Bonds's absence.

After the court resumed the proceedings, the State reported that Bonds was not admitted into any hospital, nor was he in custody pending new charges.[2]  Defense counsel reminded the court that Bonds had been admitted to the hospital that weekend.  Defense counsel also explained

---

[1] The State points out that there was no "proof or sworn statement of [Bonds's] alleged injury." Br. of Resp't at 6.

[2] Specifically, the State checked the "Tacoma General MultiCare system and the Virginia Mason-Franciscan System," which was "able to check all of the hospitals in their system."  4 RP at 403. Within that system, the State checked "Allenmore, Mary Bridge, Good Samaritan, Auburn, Covington, Capitol Medical, Bonney Lake, Federal Way and . . . Spokane."  4 RP at 403.  The State also checked its internal system and saw "no new bookings into the Pierce County Jail, [and] no new incident numbers attached to Mr. Bonds."  4 RP at 403.  Additionally, the State "checked the JABS system" and "Vine Link" (a statewide database) and found "no new charges."  4 RP at 403.

that they could not reach Bonds, and Bonds was not in the parking lot or other parts of the courthouse.

The court acknowledged that at that point, Bonds was 50 minutes late, "which [was] a period of time . . . longer than his typical late arrival and more consistent with his not appearing." 4 RP at 404. To the court, it appeared that "this [was] not a situation of [Bonds] just being late [that] morning," it was "a situation of him deciding not to appear." 4 RP at 405. The court made clear that if Bonds appeared, he would "be given an opportunity to tell the Court what the circumstances were about his late arrival [that day] or if it's [at] a later date, the circumstances around why he didn't show." 4 RP at 405. The court recessed again to allow defense counsel to speak with Bonds's brother, who came to observe the trial, regarding Bonds's absence.

After the court resumed the proceedings, defense counsel explained that Bonds's brother had seen Bonds the night prior. Bonds's brother "dropped clothes off for him," and Bonds told his brother "to come to the courthouse at 9:00 [a.m.]" 4 RP at 406. Bonds's brother also reported that Bonds "was picked up by another individual" and left for trial around 8:30 a.m. that day. 4 RP at 406. Based on all of the information provided to the court, it concluded that Bonds "voluntarily absented himself."[3] 4 RP at 407.

The court proceeded with closing argument, jury deliberations, and the reading of the verdict.[4] The jury found Bonds guilty as charged. The court issued a bench warrant after receiving the guilty verdict and dismissing the jury.

---

[3] At no point did defense counsel object to the court continuing the proceedings without Bonds present.

[4] All discussion of Bonds's absence was had outside the jury's presence.

V.      BAIL HEARING

Bonds was arrested on the warrant approximately five months after he failed to appear at his trial.  At the hearing setting conditions of release, the State requested a "no-bail hold pending sentencing."  RP (Dec. 4, 2023) at 4.  Defense counsel reserved argument on bail at that time.  Bonds provided no explanation for his absence from the third day of trial.  The court ruled that Bonds was to be held in custody without bail.

VI.     SENTENCING

The court convened on December 15, for Bonds's sentencing hearing.  Defense counsel did not address the reason for Bonds's absence at trial at the sentencing hearing.  After hearing from both the State and defense counsel regarding their sentencing recommendations, the court provided Bonds an opportunity to speak.  Specifically, the court stated, "Mr. Bonds, you have the right to speak to the Court at the time of sentencing.  Is there anything that you would like to say before I make a decision regarding this case?"  5 RP at 477.  Rather than explaining his absence, Bonds simply replied, "I'd like to apologize to the Court, apologize to you and the State."  5 RP at 477.  Bonds gave no reason for his absence at trial.  Before announcing its sentencing decision, the court commented, "Well, first of all, I'm glad to see you because when you didn't show up for the verdict—although I wasn't there, but I heard you'd missed that, and so I was concerned that maybe something had happened to you."  5 RP at 478.  There was no response to the court's comment by either defense counsel or Bonds.

The court imposed a sentence of 43 months in confinement and denied Bonds's request for a drug offender sentencing alternative.

Bonds appeals.

ANALYSIS

I.     EVEN THOUGH BONDS FAILED TO OBJECT TO THE ALLEGED ERROR BELOW, WE EXERCISE OUR DISCRETION TO CONSIDER THE MERITS OF HIS APPEAL

Generally, courts do not consider issues raised for the first time on appeal. *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995); RAP 2.5(a). We may, however, consider an argument at our discretion. *See* RAP 1.2(a), (c); RAP 2.5(a).

Here, Bonds failed to object to the court's alleged error at all possible opportunities. Nevertheless, we will consider Bonds's argument pursuant to our discretion under the Rules of Appellate Procedure. *See* RAP 1.2(a), (c).

II.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING BONDS VOLUNTARILY ABSENTED HIMSELF FROM THE PROCEEDINGS

Bonds argues that the court violated his right to be present at all critical stages of trial.[5] Relatedly, Bonds argues that the court erred by concluding that he voluntarily absented himself after he failed to show up to trial for closing arguments and the verdict. We disagree.

A criminal defendant has a fundamental right to be present at all critical stages of a proceeding under the Sixth Amendment and Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, as well as article 1, section 22 of the Washington State Constitution. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011); *Thurlby*, 184 Wn.2d at 624. A critical stage of a criminal proceeding is one where a defendant's "presence has a relation, reasonably substantial, to the fullness of [their] opportunity to defend against the charge." *Irby*, 170 Wn.2d at 881 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom. Malloy v. Hogan*, 378 U.S. 1, 84

---

[5] We do not suggest that closing argument, jury deliberation, and the reading of the jury's verdict constitutes a critical stage of a criminal proceeding where a defendant has a right to be present.

S. Ct. 1489, 12 L. Ed. 2d 653 (1964)); *State v. Houston-Sconiers*, 188 Wn.2d 1, 29, 391 P.3d 409 (2017). "'The core of the constitutional right to be present is the right to be present when evidence is being presented.'" *State v. Slert*, 186 Wn.2d 869, 875, 383 P.3d 466 (2016) (quoting *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994)). And CrR 3.4(b) dictates that a defendant must be present "at every stage of the trial[,] including the empaneling of the jury[,] . . . the return of the verdict, and at the imposition of sentence."

The right to be present, however, is not absolute. *Irby*, 170 Wn.2d at 881. A defendant "does not have a right to be present when his or her 'presence would be useless, or the benefit but a shadow.'" *Id.* (quoting *Snyder*, 291 U.S. at 106-07). Additionally, a defendant "may waive the right to be present at trial so long as the waiver is knowing and voluntary." *Thurlby*, 184 Wn.2d at 624; CrR 3.4(c) ("[T]he defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial to and including the return of the verdict."). Waiver can be express or implied. *Thurlby*, 184 Wn.2d at 624. "If a trial has begun in the defendant's presence, a subsequent voluntary absence of the defendant operates as an implied waiver of the right to be present." *Id.*

To conclude that a defendant voluntarily waived their right to be present at trial, a court must:

> (1) [make] a sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary,
> (2) [make] a preliminary finding of voluntariness (when justified), and
> (3) [afford] the defendant an adequate opportunity to explain his absence when he is returned to custody and before the sentence is imposed.

*State v. Thomson*, 123 Wn.2d 877, 881, 872 P.2d 1097 (1994) (internal quotation marks omitted) (quoting *State v. Washington*, 34 Wn. App. 410, 414, 661 P.2d 605 (1983), *abrogated on other grounds by State v. Hammond*, 121 Wn.2d 787, 854 P.2d 637 (1993)). "Whether a voluntary

waiver has occurred is determined by the totality of the circumstances." *Id.*  Courts "will indulge a presumption against waiver of the right." *Id.*

A court's decision to proceed with trial in the defendant's absence is reviewed for an abuse of discretion. *State v. Garza*, 150 Wn.2d 360, 365-66, 77 P.3d 347 (2003).  A "court abuses its discretion when its decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Thurlby*, 184 Wn.2d at 624 (quoting *State v. Woods*, 143 Wn.2d 561, 579, 23 P.3d 1046 (2001)).

Here, the court did not abuse its discretion by concluding Bonds voluntarily absented himself from the proceedings, thereby waiving his right to be present at trial.  First, the court made "a sufficient inquiry into the circumstances of the defendant's disappearance." *Id.*  This case is similar to *Thurlby*, where the defendant was also found to be voluntarily absent mid-trial. *Id.* at 620-23.  In response to Thurlby's absence, the trial court postponed the proceedings to contact local hospitals and jails to determine if Thurlby had been admitted. *Id.* at 621-22.  Additionally, defense counsel informed the court that they "had not received any communication from Thurlby." *Id.* at 622.  Our Supreme Court concluded that the trial court made a sufficient inquiry. *See id.* at 626-27.

Like in *Thurlby*, after Bonds failed to appear, the State verified that he was not admitted into any hospital or jail.  Defense counsel searched the courthouse and attempted to contact Bonds several times to no avail.  Defense counsel also talked with Bonds's brother, who was surprised to learn that Bonds was absent given the fact Bonds had left for court earlier that morning.  And

unlike *Garza*, where the court found that the trial court hastily concluded that the defendant was voluntarily absent after five minutes, 150 Wn.2d at 369, here, the court waited over an hour to afford the parties time to locate Bonds before resuming the proceedings. Based on these facts, the court made a sufficient inquiry into Bonds's absence.

Second, the court was justified in preliminarily concluding that Bonds voluntarily absented himself from the proceedings. Bonds argues that the court failed to "'indulge every reasonable presumption against waiver'" because of the alleged head injury he sustained the weekend before trial. Br. of Appellant at 11 (quoting *Thurlby*, 184 Wn.2d at 626). Based on the totality of the circumstances, however, the court's determination was proper. While other cases highlight a defendant's tardiness, which was present here, Bonds's case is unique in the fact that he failed to appear at his first trial date altogether. *See Thomson*, 123 Wn.2d at 879-80; *Garza*, 150 Wn.2d 363-65; *Thurlby*, 184 Wn.2d at 621-23. With this in mind, the court acknowledged that this instance was more akin to Bonds's first absence rather than his other examples of being tardy. And with respect to his alleged injury, there is nothing in the record to show that Bonds was admitted to any hospital in the surrounding region related to his condition. Bonds's brother also confirmed that Bonds had left earlier that morning for trial. Moreover, Bonds made no effort to contact defense counsel or the court to inform them of any delay. Therefore, it was not an abuse of discretion for the court to conclude that Bonds was voluntarily absent.

Third, the court provided Bonds the opportunity to explain his absence. This case is most similar to *Thomson* where the defendant failed to appear after jury selection and was absent for the remainder of trial. 123 Wn.2d at 879. At sentencing, Thomson "apologized for his absence at trial without further explanation." *Id.* at 880. The court in *Thomson* affirmed the defendant's judgment, concluding that "the trial court did not abuse its discretion in deciding to continue with trial in the [d]efendant's absence." *Id.* at 884.

Here, before concluding Bonds was voluntarily absent, the court told defense counsel that the court would provide him the opportunity to explain his absence upon his return. When Bonds was brought back into court five months after the jury's verdict, neither Bonds nor his defense counsel provided any explanation as to why Bonds was absent from trial, either at the bail hearing or sentencing hearing. At sentencing, for example, the court, eliciting Bonds's allocution, asked, "Mr. Bonds, you have the right to speak to the Court at the time of sentencing. Is there anything that you would like to say before I make a decision regarding this case?" 5 RP at 477. Bonds provided no response regarding his absence and simply apologized. Based on this record, Bonds was provided an adequate opportunity to explain his absence.

Therefore, we conclude that the court did not abuse its discretion in concluding that Bonds voluntarily absented himself from the proceedings and that Bonds waived his right to be present.[6]

---

[6] Because we conclude that Bonds waived his right to be present, we need not determine whether closing argument, jury deliberation, and the reading of the jury's verdict constitutes a critical stage of a criminal proceeding where a defendant has a right to be present.

STATEMENT OF ADDITIONAL GROUNDS

I.    WE DECLINE TO REVIEW BONDS'S FIRST SAG BECAUSE IT WAS ADEQUATELY ADDRESSED
      BY COUNSEL

Bonds claims that his absence inflamed the jury, which influenced the jury's decision.  To

that end, he argues the court erred in deciding to continue the proceedings without him present.

But this argument restates arguments made by counsel and fails to recognize that Bonds voluntarily

absented himself.  We decline to address issues in a SAG that have been thoroughly addressed by

counsel.  RAP 10.10(a).

II.   BONDS RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

Bonds claims that he received ineffective assistance of counsel because his attorney should

have objected to continuing the trial without his presence.  We disagree.

To prove ineffective assistance of counsel, a defendant must show (1) counsel's

representation was so deficient it fell "'below an objective standard of reasonableness'" and (2)

that deficiency prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260

(2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.

Ct. 2052, 80 L. Ed. 2d 674 (1984)).  Failure to satisfy either requirement defeats the claim.  *State

v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024).

First, "[t]he defendant must overcome 'a strong presumption that counsel's performance

was reasonable.'"  *Id.* at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of

counsel.  *Kyllo*, 166 Wn.2d at 863.  A "defendant can rebut the presumption of reasonable

performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's

performance.'"  *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101

P.3d 80 (2004)).  Specifically, to show ineffective assistance of counsel for failure to object, "a

defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Second, prejudice requires showing that but for counsel's deficient performance, "there is a reasonable probability . . . the result of the proceeding would have differed." *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 694). "[T]he ultimate 'question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Bertrand*, 3 Wn.3d at 129 (quoting *Strickland*, 466 U.S. at 695). Therefore, "[p]rejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

Here, Bonds's ineffective assistance of counsel claim fails. First, Bonds cannot demonstrate that his attorney's conduct was not reasonable. Defense counsel made several requests to delay the determination of voluntary absence. After the investigation into Bonds's disappearance yielded no information regarding his whereabouts, there was no basis for counsel to delay the proceedings any further. It would be unreasonable to expect defense counsel to request any further delay, especially in light of the fact there was no information suggesting Bonds's absence was anything but his own voluntary choice.

Second, even if defense counsel's failure to object was deficient, Bonds cannot demonstrate that he was prejudiced by counsel's failure to object; there is no evidence in the record suggesting that Bonds's absence influenced the proceedings in any way.

Therefore, we conclude that Bonds's ineffective assistance of counsel claim fails.

59870-1-II

## CONCLUSION

Accordingly, we affirm Bond's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Price, J.

13